IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA REED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:15-279 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| IC SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

I.  **Introduction**

This is an action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA" or "Act"). Pending before the Court is Defendant's Motion for Summary Judgment (ECF No. 37). For the reasons that follow, Defendant's Motion is **GRANTED**.

II.  **Background**

Plaintiff, Laura Reed, alleges that between December 2014 and March 2015, Defendant, a "debt collector" under the Act, "violated [15 U.S.C.] §§ 1692d and 1692d(5) . . . by repeatedly contacting Plaintiff on her cellular telephone, more than eighty-four (84) times over a four (4) month period [beginning in December 2014 and lasting through March 2015], as well as calling multiple times a day." Compl. ¶ 16(c). Plaintiff also alleges that Defendant failed to send her written notification of her rights, along with information about the debt, within five days of its initial communication with her, as required by 15 U.S.C. § 1692g(a). *Id.* at ¶ 12.

The parties have completed discovery, and the following facts are not in dispute.

According to Defendant's Rule 30(b)(6) designee, Michael Zelbitschka, Defendant attempted to reach Plaintiff by calling her and sending her a notice dated December 9, 2014, to the address where she was living at the time. The notice, which was addressed to Plaintiff under her maiden name, stated "[y]our delinquent account has been turned over to this collection agency" and specified the amount of the debt and the name of the creditor. It also advised Plaintiff of her right to dispute the debt. Although Plaintiff claims that she never received the notice, there is no evidence that it was ever returned to Defendant as undeliverable.

Defendant's account notes reflect that Defendant attempted to call Plaintiff's cell phone 125 times over a span of 135 days, beginning on December 8, 2014, and ending on April 22, 2015. There were 35 days on which Defendant called at least two times, and three days on which Defendant called three times. All of the calls went to Plaintiff's voicemail, and on one occasion, Defendant left a message. According to the account notes, the calls ceased after Plaintiff's attorney wrote a letter to Defendant, requesting that it stop all communication with Plaintiff.

Plaintiff testified that once she started receiving the calls,[1] she downloaded a cell phone app called "Blocked Calls Get Cash."[2] From that point on, when Plaintiff

---

[1] Plaintiff has filed six similar law suits alleging FDCPA violations against other debt collectors during the same time period, so it is not clear whether she downloaded the app after she started to receive calls from Defendant, in particular, or whether she downloaded the app after receiving calls from other debt collectors but before she received any calls from Defendant.

[2] According to its Web site, "[t]he Block Calls Get Cash app was developed to help [users] effortlessly exercise [their] rights under the Telephone Consumer Protection Act

received a call on her cell phone, the app "would ask whether it was a personal call [or] whether it was a debt collector or a telemarketer[.]" Once Plaintiff identified the caller, the app would "pop up with another screen saying 'if this call is illegal it could get you cash for said call.' And then [it would] go away. And from that point on, whatever number that popped up, if you [didn't] want it to call you anymore, it [would] block it." Plaintiff explained that her phone would "ring for, like, a second or two" before blocking the call, and then the app "would give [her] a notification of a blocked call." The blocked calls were then logged in the app. Plaintiff testified that she had the option of answering the call before it was blocked, "but most of the time, when [she] got the phone calls, [she was] at work, and [she could not] answer [the phone]." It is undisputed that Plaintiff never requested the name of the creditor in writing or requested that Defendant stop making the calls.

### III. Standard of Review

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citation omitted). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate

---

(TCPA)." http://www.blockcallsgetcash.com/the-law/. "If [a consumer] receives a robocall, BCGC prompts [the consumer] to answer a few simple questions" and the call is logged. *Id.* Then that "information is reviewed by Lemberg Law, the most active consumer law firm in the country[,]" for violations of the TCPA. *Id.*

credibility. *See Montone v. City of Jersey City, et al.*, 709 F.3d 181 (3d Cir. 2013). Rather, the Court is only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In evaluating the evidence, the Court must interpret the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-movant. *Watson v. Abington Twp.*, 478 F. 3d 144, 147 (3d Cir. 2007).

IV. Discussion

Defendant advances two arguments in support of its motion. First, Defendant argues that Plaintiff lacks Article III standing. Second, Defendant contends that, assuming Plaintiff has standing, she has nonetheless failed to adduce sufficient evidence to support either of her claims under the FDCPA. The Court will begin, as it must, with the question of whether Plaintiff has standing, and then, if necessary, address the remainder of Defendant's contentions.

A. Standing

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. *See* U.S. Const. art. 3, § 2. In every case, the plaintiff bears the burden of establishing Article III standing. *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007). To do so, "a plaintiff must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 192 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015)). With respect to the injury-in-fact

requirement, "a plaintiff must claim 'the invasion of a concrete and particularized legally protected interest' resulting in harm 'that is actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014)).

Defendant asserts that Plaintiff lacks standing because she has not established that she suffered a concrete injury,[3] "as is clear from Plaintiff admittedly not answering the telephone calls at issue and the only purported 'injury' was the annoyance she purportedly experienced after the telephone call would ring one (1) or two (2) times before being blocked" by the Blocked Calls Get Cash app. Def.'s Br. at 14. Defendant's argument is based on the Supreme Court's recent decision in *Spokeo Inc. v. Robbins*, --- U.S. ----, 136 S. Ct. 1540 (2016). At issue in *Spokeo* was whether alleged procedural violations of the Fair Credit Reporting Act ("FCRA") were sufficiently concrete to establish standing. *Spokeo*, 136 S. Ct. at 1547. The plaintiff there claimed that Spokeo, a company that operates an online "people search engine," disclosed inaccurate information about him to its customers, in violation of the FCRA. *Id.* at 1544. The Ninth Circuit held that the plaintiff had standing, finding that he adequately alleged that "Spokeo violated *his* statutory rights" and that his "personal interests in the handling of his credit information are individualized rather than collective." *Id.* at 1544-45 (emphasis in original). The Supreme Court reversed and remanded the case to the Ninth Circuit, after concluding that the Ninth Circuit's analysis was "incomplete"

---

[3] There is no question that Plaintiff's alleged injury is particularized, as Plaintiff is asserting that her own rights were violated and not making a generalized grievance. Thus, the Court will only address whether the concreteness requirement is met.

because the court did not consider whether the plaintiff's injury was concrete, as well as particularized. *Id.* at 1545 (emphasis in original) (explaining that "the injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete *and* particularized'").

While the *Spokeo* Court did not address whether the plaintiff's alleged injury was sufficiently concrete to establish standing, it did offer some guidance on the issue. As the Supreme Court explained, "a 'concrete' injury must be '*de facto*'; that is, it must actually exist" or be "real, and not abstract." *Id.* The injury need not, however, be tangible. *Id.* at 1549. "In determining whether an intangible harm constitutes injury in fact," the Supreme Court explained, "both history and the judgment of Congress play important roles." *Id.* In particular, courts should look to "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* Congress' "judgment is also instructive and important," since it "may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992)). At the same time, the *Spokeo* Court made clear that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. In other words, a plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation" because "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. Instead, "Article III standing requires a concrete injury

even in the context of a statutory violation." *Id.* at 1549.

To illustrate, the Supreme Court offered two examples of "bare" procedural violations that would be inadequate to confer standing. *Id.* First, the Court explained, "even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate[,]" and thus the disclosure may result in no harm. *Id.* Second, the Supreme Court observed that it would be "difficult to imagine how the dissemination of an incorrect zip code" – conduct that may technically violate the FCRA – "could work any concrete harm." *Id.*

Here, unlike in *Spokeo*, Plaintiff is not just alleging a "bare" procedural violation. *See Church v. Accretive Health, Inc.*, --- F. App'x ----, 2016 WL 3611543, at *3 n.2 (11th Cir. July 6, 2016) (distinguishing between "bare" procedural violations and violations of substantive provisions of the FDCPA); *Jackson v. Abendroth & Russell, P.C.*, No. 416CV00113RGEHCA, 2016 WL 4942074, at *9 (S.D. Iowa Sept. 12, 2016)(explaining that "the FDCPA created the substantive right for consumers to be free from debt collector abuse"); *Prindle v. Carrington Mortg. Servs.*, LLC, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *9 n.10 (M.D. Fla. Aug. 16, 2016) (noting that the plaintiff's "right [to be free from abusive debt collection practices] appears to be substantive in nature (in that it confers on her a right to protection from certain unlawful conduct)"); *Mey v. Got Warranty, Inc.*, No. 5:15-CV-101, 2016 WL 3645195, at *2 (N.D.W. Va. June 30, 2016) (explaining that the *Spokeo* Court's observation regarding "bare" procedural violations "has little application to claims under the TCPA, since those claims are not based on 'bare procedural' rights, but rather on substantive prohibitions of actions directed

toward specific consumers"). The FDCPA was enacted "to eliminate abusive debt collection practices[.]" 15 U.S.C. § 1692(e). Included among the prohibited practices is "causing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass." *Id.* at § 1692d(5).

"By prohibiting such practices and providing consumers with a right to sue for violations of that prohibition, the FDCPA implicitly confers on consumers the right to be free from those practices when they receive debt-collection communications from debt collectors." *Prindle*, 2016 WL 4369424, at *8. In other words, "[t]hrough [§ 1692d of the FDCPA], Congress identified an existing concrete harm (being subjected to specific abusive debt-collection practices) that, by itself, was inadequate at law to establish standing . . . and elevated it to the status of a 'legally cognizable injur[y]' (by providing consumers with a new, substantive right to be free from such abusive debt-collection practices, without regard to whether a consumer experienced a more tangible 'harm[.]'" *Id.* When someone is subjected to such practices, she has suffered a concrete injury and "'need not alleged any additional harm beyond the one Congress has identified.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

Plaintiff, as the object of repeated phone calls from Defendant which caused her wasted time and annoyance, "has suffered injury in precisely the form the [FDCPA] was intended to guard against." *Id.* (quotation marks omitted). This injury, while perhaps minor in the eyes of some, is sufficiently concrete to confer standing, regardless whether Plaintiff suffered any additional injury. That is true even though Plaintiff did not answer the calls in question, for she still had to spend time addressing them. *See*

*Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 234 (11th Cir. 2011) (recognizing "that answering the phone is not necessary for there to be harassment" under § 1692d(5) and noting that "[t]his makes good sense because a ringing telephone, even if screened and unanswered, can be harassing"); *Booth v. Appstack, Inc.*, No. c-13-1533, 2016 WL 3030256, *3 (W.D. Wash. May 24, 2016) (holding that plaintiffs had standing since the alleged violations required them "to waste time answering or otherwise addressing widespread robocalls"). Therefore, the Court will address the merits of Plaintiff's claims.

### B.    Merits

#### 1.    Count I – 15 U.S.C. §§ 1692d and 1692d(5)

In Count I, Plaintiff seeks recovery under 15 U.S.C. §§ 1692d and 1692d(5).[4] Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In addition to that general prohibition, the statute specifically prohibits a debt collector from "causing a telephone to ring . . . repeatedly or continuously with intent to annoy, abuse, or harass." *Id.* at § 1692d(5). "For the purposes of the FDCPA, continuously means 'making a series of telephone

---

[4] Plaintiff has purported to raise claims under both § 1692d and § 1692d(5). "A plaintiff 'may ordinarily pursue claims under both § 1692d and § 1692d (5).'" *Neu v. Genpact Servs., LLC*, No. 11-CV-2246 W KSC, 2013 WL 1773822, at *3 (S.D. Cal. Apr. 25, 2013) (quoting *Stirling v. Genpact Services, LLC*, No. 2:11–CV–06369, 2012 WL 952310 at *3 (C.D. Cal. Mar.19, 2012)). But where, as here, the claim "fits entirely within § 1692d(5)'s prohibition against telephone calls made 'with intent to annoy, abuse, or harass[,]'" that more specific provision governs. *Id.* (citing Stirling, 2012 WL 952310 at *3; *Hendricks v. CBE Grp., Inc.*, 891 F. Supp. 2d 892, 896 n.2 (N.D. Ill. 2012)).

calls, one right after the other,' and repeatedly means 'calling with excessive frequency under the circumstances.'" *Kromelbein v. Envision Payment Sols., Inc.*, No. 3:11-CV-1598, 2013 WL 3947109, at *6 (M.D. Pa. Aug. 1, 2013) (quoting *Carr v. NCO Financial Systems, Inc.*, 11–CV–2050, 2011 WL 6371899, *2 n.3 (E.D. Pa. 2011) (citing FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097–02, 50105 (Dec. 13, 1988))).

Generally, the question of whether a debt collector acted with the necessary intent is left for the jury. *See Chisholm v. AFNI, Inc.*, No. CV 15-3625(JBS/JS), 2016 WL 6901358, at *3 (D.N.J. Nov. 22, 2016) (citing *Rush v. Portfolio Recovery Assocs.*, 977 F. Supp. 2d 414, 429 (D.N.J. 2013)). "A court, however, may grant summary judgment if a plaintiff fails to 'provide evidence such that a reasonable juror could conclude that such calls were caused by Defendants with an intent to harass.'" *Turner v. Prof'l Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 578 (D.N.J. 2013) (quoting *Derricotte v. Pressler & Pressler, LLP*, No. 10–1323, 2011 WL 2971540, at *3 (D.N.J. July 19, 2011)). "Courts have used a number of different factors to infer whether a debt collector acted with the requisite intent, primarily focusing on the frequency, pattern and substance of the calls." *Kromelbein*, 2013 WL 3947109, at *6 (citing *Nyce v. Sterling Credit Corp.*, 11–CV–5066, 2013 WL 1388051, *4 (E.D. Pa. 2013)).

Although "[t]here is no consensus as to the amount and pattern of calls necessary" to survive summary judgment, *Turner*, 956 F. Supp. 2d at 578, it is clear that "the number of calls alone cannot violate the FDCPA; a plaintiff must also show some other egregious or outrageous conduct in order for a high number of calls to have the 'natural consequence' of harassing a debtor[,]" *Chisholm*, 2016 WL 6901358, at *3. For

example, "courts have found that even 'daily' calls, unaccompanied by other egregious conduct, such as calling immediately after hanging up, calling multiple times in a single day, calling places of employment, family, or friends, calling at odd hours, or calling after being asked to stop, is insufficient to raise a triable issue of fact for the jury." *Waite v. Fin. Recovery Servs.*, Inc., No. 8:09-CV-02336, 2010 WL 5209350, at *3 (M.D. Fla. Dec. 16, 2010) (citing *Saltzman v. I.C. Sys., Inc.*, No. 09–10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009); *Arteaga v. Asset Acceptance, LLC*, No. CV–F–09–1860 LJO GSA, 2010 WL 3310259, at *5 (C.D. Cal. Aug. 23, 2010); *Tucker v. CBE Grp.*, Inc., 710 F. Supp. 2d 1301, 1305 (M.D. Fla. 2010); *Katz v. Capital One*, No. 1: 09CV1059 (LMB/TRJ), 2010 WL 1039850, at *3 (E.D. Va. Mar. 18, 2010)).

In this case, the Court finds that no reasonable jury could infer that Defendant acted with the intent to "annoy, abuse, or harass" Plaintiff. To be sure, the number of calls does seem relatively high: Defendant called 125 times over the span of 135 days – more than once per day on 35 days, and three times per day on three days. Nevertheless, Plaintiff has not adduced evidence of egregious conduct on the part of Defendant. First, the calls were never back-to-back; there was always at least two hours between them, and often times, more than that. Second, the calls took place between the hours of approximately 8 a.m. and 7:45 p.m., with the vast majority taking place within ordinary business hours. Third, Defendant only left one message during the entire four-month span, and did not call Plaintiff again for three days after leaving that message. Fourth, Defendant never communicated directly to Plaintiff. Indeed, Plaintiff was able to block the calls following just a few rings via the "Block Calls Get Cash" app on her

cell phone, so Defendant was put in a position where it effectively had to place repeated calls in order to try to reach her. Finally, the calls ceased as soon as Plaintiff's attorney contacted Defendant on April 22, 2015.

"Such facts, when coupled with [the] lack of any indication that Plaintiff ever confirmed or disputed the debt, or any allegations that [she] ever asked Defendant to cease contact, fail to raise a triable issue of fact regarding Defendant's intent to 'annoy, abuse, or harass.'" *Waite*, 2010 WL 5209350, at *4 (holding that 57 calls over two months did not establish the requisite intent). Instead, the number of unsuccessful calls over an extended period of time "suggests a difficulty in reaching [Plaintiff], not an intent to abuse, harass, or annoy[.]" *Fry v. Berks Credit & Collections, Inc.*, No. 3:11 CV 281, 2011 WL 6057781, at *4 (N.D. Ohio Nov. 17, 2011). Thus, the Court will grant Defendant's motion for summary judgment as to Count I.

### 2. Count II – 15 U.S.C. § 1692g(a)

In Count II, Plaintiff alleges a violation of 15 U.S.C. § 1692g(a). Under § 1692g(a), a debt collector is required to send the consumer written notice, *inter alia*, of the amount of the debt and the name of the creditor within five days of its initial communication with the consumer. Importantly, this section "requires only that the validation of debt notice be 'sent' by a debt collector. The debt collector need not also establish actual receipt by the debtor." *Webb v. Envision Payment Sols., Inc.*, No. CIV.A. 10-1414, 2011 WL 2160789, at *4 (W.D. Pa. May 31, 2011) (citing *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1201-02 (9th Cir. 1999)).

The evidence submitted by Defendant in support of its motion shows that the

statutorily required notice was sent to Plaintiff at her correct address on December 9, 2014, which was just one day after the initial communication with Plaintiff. The notice was not returned as undeliverable. Plaintiff, by contrast, has not adduced any evidence of her own that suggests the requisite notice was *not* sent to her correct address or that it was returned to Defendant as undeliverable. Her testimony that she never received the notice is simply not enough to create a genuine issue of material fact since the statute does not require that the notice be received. *See Mahon*, 171 F.3d at 1202. Accordingly, Defendant's motion for summary judgment will also be granted as to Count II.

**V.     Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be **GRANTED**. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAURA REED, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:15-279 |
| | ) | |
| v. | ) | JUDGE KIM R. GIBSON |
| | ) | |
| IC SYSTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**NOW**, this 10th day of January 2017, upon consideration of Defendant's Motion for Summary Judgment (ECF No. 37) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 37) is **GRANTED**.

BY THE COURT:

Kim R. Gibson
United States District Judge

cc: all counsel of record via CM/ECF